# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

AMPHONE KONGKHAM,   No. CIV S-07-0088-LKK-CMK-P

    Petitioner,

  vs.   <u>FINDINGS AND RECOMMENDATIONS</u>

JAMES A. YATES,

    Respondent.

_____/

        Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pending before the court are Petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 25), and petitioner's reply (Doc. 29).

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

A. **Facts**[1]

The California Court of Appeal recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> On April 21, 2004, 15-year-old Lilly Chanthavong was riding her bicycle with two friends. She noticed a red hatchback automobile with three people in it. She recognized one of the passengers as a person she knew as "Hum." She also recognized the driver, but she did not know his name. The car slowed down and followed Lilly for a few minutes. Then the car made a U-turn and went another way.
>
> Lilly continued riding her bicycle. As she continued down the street, Lilly saw the driver of the vehicle standing near a street corner. Lilly rode past him. The man followed Lilly, grabbed her by her neck, and pulled her off her bicycle. He yanked a gold necklace with a jade Buddha charm off Lilly's neck and ran away.
>
> Shortly thereafter, Officer Mitchell Marquez arrived at the scene. Lilly told him what happened and provided him with a description of her assailant. A month and a half later, Lilly identified defendant in a photographic lineup as the man who had taken her necklace.
>
> Before trial, defendant moved to exclude evidence of his gang membership. The trial court tentatively ruled gang evidence was inadmissible because it was irrelevant, but said the evidence could become relevant to the victim's state of mind, if, for example, she refused to testify out of fear. The court also noted the evidence could become probative of potential witness bias should a witness give inconsistent statements while testifying.
>
> At trial, Lilly cried when asked to identify her assailant and asked to speak with her mother. Out of the jury's presence, the prosecutor argued that, in accordance with the court's previous ruling, gang evidence was now admissible to explain Lilly's fear of identifying defendant in court. The court decided that if Lilly could not or would not identify anyone, the prosecutor could ask her if she believed defendant was a member of a gang.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

2

Lilly then testified she was afraid to identify her assailant and began to cry again. She identified defendant by describing what he was wearing, but she never pointed to him. Later, out of the jury's presence, the court noted Lilly's "extreme reluctance" in identifying defendant and labeled the identification "cryptic" but "sufficient." The court decided Lilly's state of mind was at issue, and allowed the prosecution to introduce evidence showing Lilly was afraid to identify defendant because she believed him to be a member of Laos Pride Gangsters (LPG). The court gave the jury a limiting instruction stating the gang evidence related only to Lilly's state of mind.

Lilly then testified she believed defendant was a member of LPG because his relatives had "LPG" tattooed on their arms, she had seen defendant in the company of LPG members, with whom she was familiar, and had seen defendant wear a shirt with "LPG" inscribed on the pocket.

The prosecution introduced additional gang evidence when 15-year-old Andy Phonesavanh testified. Andy testified he remembered telling a detective he was in the backseat of a red hatchback with defendant and "Hum" on April 21, 2004. Andy remembered telling the detective he saw Lilly on her bicycle and defendant said he planned to take her necklace from her. He remembered telling the detective that defendant left the car and later returned with the necklace. Andy also testified everything he told the detective was a lie and he was home all day on April 21, 2004.

Further, Andy testified he knew defendant and "Hum" were gang members, but Andy denied being a gang member. After the prosecutor asked Andy how long he had been "hanging out with" LPG, defense counsel objected, and the court held a sidebar discussion. The court ruled the prosecutor could ask Andy if he associated with LPG for the limited purpose of proving witness bias. Andy resumed his testimony, and stated he had not associated with LPG "that long." The court again provided the jury with a limiting instruction telling them it could only consider the gang evidence to "show the witness' potential bias and his state of mind." Upon further questioning, Andy admitted he had been associating with LPG for four years.

The court also ruled gang evidence was relevant on the issue of the perpetrator's identity, in addition to the grounds stated before. The court reasoned that, since Lilly was reluctant to identify defendant in court because she believed him to be a gang member, her initial statements to the police on the day of the robbery were relevant to her identification of defendant as the perpetrator. The court maintained, however, that evidence of an unrelated alleged shooting incident in 2003, as well as the fact that defendant was a "validated" gang member, were irrelevant and

inadmissible under Evidence Code section 352.

Officer Marquez testified Lilly told him she believed the man who took her necklace was a member of LPG. Marquez said Lilly gave him an address of where she believed LPG "hung out." The court provided a limiting instruction informing the jury that the evidence was only relevant to Lilly's state of mind and to her identification of defendant as the perpetrator.

(Pet. at 22-26; Resp't Lod. Doc. 3, at 1-5.)

### B.  Procedural History

Petitioner was charged in a felony complaint, deemed an information, with violating California Penal Code § 211, robbery of the second degree. (Clerk's Tr., Lod. Doc. 1, at 8). Following a jury trial, Petitioner was convicted of the charge of robbery in the second degree. (Id. at 192). On October 22, 2004, Petitioner was sentenced to three years.[2] (Id. at 220). Petitioner appealed his conviction to the California Court of Appeal. On March 23, 2006, the Court of Appeal issued an order affirming the judgment. Petitioner then appealed to the California Supreme Court, who denied his petition for review on June 16, 2006.

Following this denial, Petitioner filed his federal petition for writ of habeas corpus in this court on January 16, 2007. In his petition, Petitioner claims the admission of gang membership evidence violated his rights to a fair trial and due process.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998). The AEDPA

---

[2]  Petitioner was also sentenced to two years on a violation of probation, which was to run concurrent to the principle charge.

does not, however, apply in all circumstances. When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo. See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner). When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, under § 2254(d), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412) . "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas

1  relief is unavailable, unless it "squarely addresses" an issue.  See Moses v. Payne, 555 F.3d 742,
2  753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)).
3  For federal law to be clearly established, the Supreme Court must provide a "categorical answer"
4  to the question before the state court.  See id.; see also Carey, 549 U.S. at 76-77 (holding that a
5  state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not
6  contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice
7  created by state conduct at trial because the Court had never applied the test to spectators'
8  conduct).  Circuit court precedent may not be used to fill open questions in the Supreme Court's
9  holdings.  See Carey, 549 U.S. at 74.

10        In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a
11  majority of the Court), the United States Supreme Court explained these different standards.  A
12  state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by
13  the Supreme Court on the same question of law, or if the state court decides the case differently
14  than the Supreme Court has on a set of materially indistinguishable facts.  See id. at 405.  A state
15  court decision is also "contrary to" established law if it applies a rule which contradicts the
16  governing law set forth in Supreme Court cases.  See id.  In sum, the petitioner must demonstrate
17  that Supreme Court precedent requires a contrary outcome because the state court applied the
18  wrong legal rules.  Thus, a state court decision applying the correct legal rule from Supreme
19  Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See
20  id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to
21  determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040,
22  1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which
23  case federal habeas relief is warranted.  See id.  If the error was not structural, the final question
24  is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

25        State court decisions are reviewed under the far more deferential "unreasonable
26  application of" standard where it identifies the correct legal rule from Supreme Court cases, but

unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76. This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless. See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever. See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000). Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA. See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law. See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Plaintiff claims his rights to due process and a fair trial were violated by the trial

court's admission of evidence that he was a member of a gang. He claims the admission of gang evidence was irrelevant to motive or identity, and the evidence was unduly prejudicial. He argues the evidence of gang membership was unnecessary for the reasons it was admitted, specifically that the witnesses testified that they knew Petitioner, the evidence was merely cumulative, and it did not change the quality of the witness's testimony or credibility. Thus, the trial court abused its discretion in allowing such highly inflammatory evidence to be admitted, especially in light of the lack of physical evidence and alibi defense.

In affirming Petitioner's conviction, the California Court of Appeal rejected his claim, reasoning as follows:

> Gang evidence is admissible when relevant to prove some fact other than the defendant's criminal propensity. (Evid. Code, § 1101, subd. (b); *People v. Williams* (1997) 16 Cal.4th 153, 193.) However, "even where gang membership is relevant, because it may have a highly inflammatory impact on the jury trial courts should carefully scrutinize such evidence before admitting it. [Citation.]" (*People v. Williams*, *supra*, at p. 193.) Because it may prejudice a jury, our Supreme Court has warned against the introduction of "evidence of gang membership if only tangentially relevant, given its highly inflammatory impact." (*People v. Cox* (1991) 53 Cal.3d 618, 660.)
>
> "[T]he prejudice contemplated by this rule is not merely evidence unfavorable to the [defendant]. Realistically, the majority of prosecution evidence will be unfavorable to the [defendant]. Rather, the rule contemplates ' "... evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, 'prejudicial' is not synonymous with 'damaging.' " ' " (*People v. Ortiz* (1995) 38 Cal.App.4th 377, 394, citing *People v. Karis* (1988) 46 Cal.3d 612, 638.)
>
> Evidence Code section 352 provides the trial court with discretion to exclude evidence if the probability that its admission will create substantial danger of undue prejudice substantially outweighs its probative value. The trial court has broad discretion in ruling on whether evidence is substantially more prejudicial than probative. (*People v. Kipp* (2001) 26 Cal.4th 1100, 1121.) An appellate court reviews the trial court's ruling on the admissibility of evidence for abuse of discretion. (*Ibid*.) "The admission of gang evidence over an Evidence Code section 352 objection will not be disturbed on appeal unless the trial court's decision exceeds the bounds of reason. [Citation.]" (*People v. Olguin* (1994) 31

Cal.App.4th 1355, 1369.)

Defendant contends the trial court erred by admitting evidence of defendant's gang membership.  We conclude admitting the evidence was proper because it was probative on the issues of the perpetrator's identity and Lilly's state of mind.

Although gang-related evidence creates a risk the jury will infer the defendant has a criminal disposition and is guilty of the offense charged, the evidence is admissible if directly relevant to a material issue. ( *People v. Williams*, *supra*, 16 Cal.4th at p. 193.) Evidence of gang membership is useful when identity is an issue. (*People v. Contreras* (1983) 144 Cal.App.3d 749, 756.) Furthermore, evidence that a witness is afraid to testify is relevant to her credibility. (*People v. Avalos* (1984) 37 Cal.3d 216, 232.) This may include evidence that the defendant belongs to a gang. (*People v. Harris* (1985) 175 Cal.App.3d 944, 957.)

Defendant argues that because the prosecution did not file any gang enhancement allegations in this case, gang evidence is irrelevant.  Defendant's argument ignores the reality that even though gang membership is not an element of a crime or enhancement, it can still be relevant to a material issue, such as identity. (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.)

The main issue in this case was identity.  Lilly's initial description of the perpetrator narrowed the pool of people that could have committed the crime to members of LPG.  Officer Marquez testified that shortly after the robbery Lilly told him her assailant was a gang member and knew where the gang "hung out." Gang evidence was highly probative of the perpetrator's identity, and thus, relevant.  Furthermore, the gang evidence was relevant because it explained Lilly's reluctance to identify defendant in court, despite the fact that she had previously picked him out of a photographic lineup.

Defendant contends that, even if the evidence were relevant to Lilly's state of mind, it was only marginally relevant because Lilly did in fact identify defendant in court, and the trial court found the identification sufficient.  Moreover, defendant contends Lilly's testimony was bolstered by the testimony of the police officers who interviewed Lilly shortly after the incident and, thus, was superfluous and unnecessary for the prosecution's case.

However, there was conflicting testimony about the defendant's appearance and clothing, as well as the color of defendant's vehicle during pertinent times.  Because the defense highlighted such conflicting testimony with respect to the identity of the perpetrator, it was important for the prosecution to bolster the credibility of Lilly's initial, cryptic identification.  Thus, the gang evidence was highly probative of the perpetrator's identity,

the main disputed issue before the jury.

When evidence of gang membership is relevant to proving the identity of the perpetrator, it is admissible, subject to analysis under Evidence Code section 352. (*People v. Champion* (1995) 9 Cal.4th 879, 922-923.) The trial court conducted an Evidence Code section 352 analysis and ruled the prejudicial effect did not significantly outweigh the probative value of the evidence.  While there may have been some danger of prejudice to defendant in identifying him as a gang member, the gang evidence was probative on the issues of his identity as the perpetrator and Lilly's state of mind.  Accordingly, we conclude the trial court did not abuse its discretion in allowing the limited gang evidence.

Defendant also contends the trial court erred by allowing admission of gang evidence to prove potential witness bias.  He claims it was cumulative and unduly prejudicial.  We conclude the trial court properly admitted the evidence.

Evidence of gang membership must be excluded if the evidence is only relevant to prove a defendant's criminal disposition. (Evid. Code, § 1101, subd. (a); *People v. Sam* (1969) 71 Cal.2d 194, 203.)  However, "[e]vidence of a relationship between a witness and a party is logically relevant to show bias. [Citation.]  One such relationship is common membership in an organization.... [Citation.]" (*People v. Ruiz* (1998) 62 Cal.App.4th 234, 240.)  For example, a witness's common gang membership with a defendant on whose behalf he testifies is relevant to establish the witness's bias. (*In re Wing Y.* (1977) 67 Cal.App.3d 69, 76-77; *United States v. Abel* (1984) 469 U.S. 45, 49, 52 [83 L.Ed.2d 450, 455, 457].)  However, "when other evidence has established such a 'relationship' then common membership evidence is cumulative and, if prejudicial, inadmissible. [Citations.]" (*People v. Maestas* (1993) 20 Cal.App.4th 1482, 1495.)

The cases finding that the admission of gang evidence to prove bias was cumulative and prejudicial are distinguishable from this case. In *People v. Cardenas* (1982) 31 Cal.3d 897, 904-905,[3] the plurality opinion found the trial court abused its discretion by allowing the prosecution to introduce evidence that defendant and his witnesses associated in the same gang.  The court reasoned that since other evidence established the fact that defendant and the witnesses " 'lived in the same neighborhood' " and " 'had the same circle of friends,' " the probative value of the gang evidence was "minimal at best," and created a substantial danger of prejudice

---

[3]   In *People v. Cardenas*, *supra*, 31 Cal.3d 897, only three justices concluded the admission of gang evidence was error and thus this conclusion lacks precedential authority. (*People v. Harris* (1985) 157 Cal.App.3d 944, 957-958.)

10

because the jury could infer defendant had a criminal disposition because gangs commit crimes. (*Ibid*.) Here, the only evidence connecting Andy with defendant was that he had known defendant for four years, he knew Hum, he knew defendant's wife, and defendant had known Andy's older brother for "a long time." Thus, the gang membership evidence was not cumulative to any other evidence tending to establish a relationship between defendant and Andy, other than the fact that they knew each other. (Cf. *People v. Maestas*, *supra*, 20 Cal.App.4th at p. 1495 [because of compelling and overwhelming evidence of codefendants' close relationship and affinity for one another, evidence they allegedly belonged to the same criminal street gang was cumulative and prejudicial].)

In light of this record, it was not an abuse of discretion to permit Andy to testify defendant was a member of LPG. The evidence explained Andy's conflicting testimony and his prior statements to the detective, which corroborated Lilly's account of the robbery. Given these several probative features, as well as the already existing references in the evidence to defendant's gang membership, any prejudicial effect did not substantially outweigh the probative value of this portion of Andy's testimony.

Defendant asserts the prosecutor exacerbated the prejudice during his closing argument. The prosecutor did not dwell on gang evidence in his closing argument. He discussed Lilly's belief that defendant was a gang member and her fear of retaliation. The prosecutor then explained Andy's refusal to cooperate with the prosecution because of his "deep ties" with defendant and the gang. He reiterated that Andy, as well as Lilly, have to go back to the same gang neighborhood, thus implying fear of the gang influenced their testimony. Most of the prosecutor's closing argument, however, was devoted to the strength of the prosecution's evidence and the weaknesses in the defense's case.

In sum, the gang membership evidence in this case was probative not only on the issue of Andy's bias, but also on the issues of Lilly's identification and state of mind. While gang evidence may be prejudicial, its prejudicial impact was considerably lessened in this case. While any gang evidence is potentially inflammatory, here the evidence was limited to gang membership and did not include the more inflammatory evidence of gang criminal activity. Argument was similarly limited to Lilly's fear of retaliation based on her belief defendant was a gang member, Andy's association with LPG, and the likelihood this relationship was Andy's probable motive to give false evidence to protect defendant. This limitation distinguishes this case from *People v. Bojorquez* (2002) 104 Cal.App.4th 335, 343-345, in which the court found evidence of gang membership was admissible to show witness bias but the admission of evidence of criminal activities of gangs, and specifically criminal activity

>attributed to defendant's gang, was prejudicial error because it tended to imply criminal disposition or actual culpability. Additionally, the court here gave a limiting instruction after the introduction of each piece of gang evidence to further minimize the risk of prejudice.
>
>Finally, defendant contends even though the trial court instructed the jury several times about the limited purpose of the evidence, it was virtually impossible to ignore the implication that defendant was guilty of this crime because he was a gang member. However, absent contrary indications, we presume the jury followed the court's instructions. (*People v. Pinholster* (1992) 1 Cal.4th 865, 919.)
>
>The court did not abuse its discretion under Evidence Code section 352 when it determined that evidence of defendant's membership in the gang was relevant to Lilly's state of mind, the perpetrator's identity, and Andy's bias, and that the probative value of the evidence outweighed the prejudicial effect.

(Pet. at 26-33; Resp't Lod. Doc. 3, at 5-12.)

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a transgression of federal law binding on the state courts. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). It is not available for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). Habeas corpus cannot be utilized to try state issues de novo. See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d 667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941). Because federal habeas relief does not lie for state law errors, a state court's evidentiary ruling is grounds for federal habeas relief only if it renders the state proceedings so fundamentally unfair as to violate due process. See Drayden v. White, 232 F.3d 704, 710 (9th Cir. 2000); Spivey v. Rocha, 194 F.3d

971, 977-78 (9th Cir. 1999); Jammal v. Van de Kamp, 926 F.2d 918, 919 (9th Cir. 1991); see also Hamilton v. Vasquez, 17 F.3d 1149, 1159 (9th Cir. 1994). To raise such a claim in a federal habeas corpus petition, the "error alleged must have resulted in a complete miscarriage of justice." Hill v. United States, 368 U.S. 424, 428 (1962); Crisafi v. Oliver, 396 F.2d 293, 294-95 (9th Cir. 1968); Chavez v. Dickson, 280 F.2d 727, 736 (9th Cir. 1960). In any event, an evidentiary error is considered harmless if it did not have a substantial and injurious effect in determining the jury's verdict. See Padilla v. Terhune, 309 F.3d 614, 621 (9th Cir. 2002); see also Laboa v. Calderon, 224 F.3d 972, 976 (9th Cir. 2001).

      Here, the evidence that Petitioner was a member of a gang was admitted for the limited purpose of establishing identity, witness credibility, and witness bias. The trial court allowed the evidence to be admitted as it related to the victim's credibility, as well as explaining her cryptic in court identification. In addition, the trial court allowed the prosecution to question a witness as to Petitioner's gang membership due to the witness's prior inconsistent statements and to show possible bias as the witness was a member of the same gang.

      Because the gang evidence in this case was admitted to establish identity, witness credibility, and witness bias, all of which were material issues in this case, the state court did not err in finding the evidence admissible. See United States v. Abel, 469 U.S. 45, 49 (1984) (deciding that gang membership was "sufficiently probative of ... possible bias ... to warrant its admission into evidence."); United States v. Santiago, 46 F.3d 885, 890 (9th Cir. 1995) (recognizing that gang evidence is admissible on the issue of witness credibility). Because the jury at Petitioner's trial could draw permissible inferences from the gang membership evidence, admission of that evidence did not violate petitioner's right to due process. See Jammal, 926 F.2d at 920. Accordingly, petitioner is not entitled to relief.

### IV. CONCLUSION

      Based on the foregoing, the undersigned recommends that Petitioner's application

for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

 DATED:  June 3, 2010

                                          _____
                                          **CRAIG M. KELLISON**
                                          UNITED STATES MAGISTRATE JUDGE